IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JIMMY LEE LOGSDON,

                    Petitioner,

          v.                           CASE NO.  08-3227-SAC

ATTORNEY GENERAL
OF KANSAS,

                    Respondent.

## MEMORANDUM AND ORDER

Jimmy Lee Logsdon, a state prisoner, filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges his multiple state convictions and aggregate sentence imposed pursuant to his pleas of no contest.  He claims that his pleas were not knowing and voluntary, and that plea counsel's representation was so deficient that it violated his constitutional right to counsel.  Respondent has filed an Answer and Return, and petitioner has filed a Traverse.  Having considered all the materials filed together with the records of the state court proceedings, the court denies the petition.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following is quoted from Logsdon v. State, 157 P.3d 670, 2007 WL 1413094 (Kan.App. May 11, 2007):

> In June 2000, in Sedgwick County District Court, Logsdon was charged with aggravated robbery, aggravated burglary, and nine counts of kidnapping.  Two months later Logsdon was additionally charged with kidnapping, theft, and two counts each of aggravated burglary and aggravated robbery.
>
> As a result of plea negotiations, the State agreed to consolidate the cases for purposes of conviction and sentencing.  Logsdon agreed to enter a plea of guilty or no contest to all of the charges in exchange for the State's promise to recommend the mitigated sentence within

the appropriate sentencing guidelines gridbox for each offense and to recommend concurrent sentencing. Under the agreement, Logsdon retained the right to seek a downward durational departure to 107 months' imprisonment.

* * *

The district court used one of the aggravated robbery convictions as a base offense and sentenced Logsdon to 233 months in prison. The district court sentenced Logsdon to 59 months for each of the other aggravated robbery convictions and ordered the sentences to be served consecutively. The district court imposed a sentence of 59 months for each of the kidnapping counts, 32 months for each aggravated burglary conviction, and 6 months for the theft conviction. Each of these sentences were ordered concurrent to the aggravated robbery sentences. As a result, the total sentence imposed was 351 months' imprisonment.

Logsdon filed a direct appeal, which was dismissed for lack of appellate jurisdiction.

In March 2002, Logsdon filed the present K.S.A. 60-1507 motion. The district court summarily denied the motion, and Logsdon appealed to this court. This court reversed the district court and remanded for an evidentiary hearing. Logsdon v. State, No. 89,885, unpublished opinion filed November 7, 2003 (Logsdon I).

On remand, the district court held a full evidentiary hearing and denied Logsdon's motion for relief.

Id. at *1-*2. The Kansas Court of Appeals (KCA) affirmed the denial on May 11, 2007; and the Kansas Supreme Court denied review on September 27, 2007.


**CLAIMS**

In a prior Order this court set forth petitioner's claims as presented in his federal Petition: (1) the trial court erred in finding that his plea was knowing and intelligent; (2) plea counsel was ineffective; and (3) the findings of fact and conclusions of law

of the state district court were not supported by the record.[1]

**STANDARDS OF REVIEW UNDER § 2254**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") govern the court's review of petitioner's claims. Under 28 U.S.C. § 2254, as amended by the AEDPA, this court may not grant federal habeas corpus relief unless the state court's adjudication of the claims either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See Williams v. Taylor, 529 U.S. 362, 404-05 (2000)(citing § 2254(d)). "Factual findings of a state court are presumed correct and can be overturned . . . only by a showing of clear and convincing evidence." Fields v. Gibson, 277 F.3d 1203, 1212 (10th Cir.), cert. denied, 537 U.S. 1023 (2002)(citing see § 2254(e)(1)); Martinez v. Zavaras, 330 F.3d 1259, 1262 (10th Cir. 2003), cert. denied, 540 U.S. 973 (2003).

The Supreme Court has determined that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. Bell v. Cone, 535 U.S. 685, 694 (2002). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of

---

[1] Claims (3) and (4) in the Petition are subsumed within claims (1) and (2) and are not discussed separately.

materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 412-13.

"Under the 'unreasonable application' clause, . . . the relevant inquiry is not whether the state court's application of federal law was incorrect, but whether it was 'objectively unreasonable'." <u>Anderson v. Mullin</u>, 327 F.3d 1148, 1153 (10th Cir.), <u>cert.</u> <u>denied</u> 540 U.S. 916 (2003)(citing <u>Williams</u>, 529 U.S. at 409); <u>House v.</u> <u>Hatch</u>, 527 F.3d 1010, 1018-19 (10th Cir. 2008), <u>cert. denied</u>, 129 S.Ct. 1345, 173 L.Ed.2d 613 (Feb. 23, 2009)(citing <u>Williams</u>, 529 U.S. at 377, 410); <u>Maynard v. Boone</u>, 468 F.3d 665, 669 (10th Cir. 2006), <u>cert.</u> <u>denied</u>, 549 U.S. 1285 (2007))("[T]he Supreme Court has concluded that although this standard does not require all reasonable jurists to agree that the state court was unreasonable, an unreasonable application constitutes more than an incorrect application of federal law."); <u>see</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003)(It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous.). "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." <u>House</u>, 527 F.3d. at 1019 (citing <u>Maynard</u>, 468 F.3d at 671).

**<u>REQUEST FOR EVIDENTIARY HEARING AND MOTION FOR COUNSEL</u>**

The court finds that an evidentiary hearing is not required in this case because Mr. Logsdon's allegations are "contravened by the existing factual record." <u>See</u> <u>Anderson v. Attorney General of Kan.</u>, 425 F.3d 853, 858 (10th Cir. 2005). For the same reason, the court finds appointment of counsel is not warranted.

## CLAIM THAT PLEA NOT KNOWING AND VOLUNTARY

In support of his claim that his pleas of no contest were not knowing and voluntary, Mr. Logsdon has alleged that: (1) he understood that under the plea agreement he would receive a sentence of 107 months, (2) he believed his criminal history score was C not A, (3) he was not aware of the maximum penalty he was facing, (4) he was not informed of a maximum penalty over 247 months, (5) he was never informed that he could receive an "accumulated sentence" of 351 months, and (6) the state court's findings of fact and conclusions of law on this claim are not supported by the record.

The Due Process Clause of the Fourteenth Amendment requires that a defendant knowingly and voluntarily enter a plea of guilty.[2] See Boykin v. Alabama, 395 U.S. 238, 242 (1969). "Once a defendant has pled guilty, the only non-jurisdictional avenue for challenging his conviction is to claim that his plea was not knowing and voluntary." Romero v. Tansy, 46 F.3d 1024, 1033 (10th Cir. 1995), cert. denied, 515 U.S. 1148 (1995). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant'." Hill v. Lockhart, 474 U.S. 52, 56 (1985)(quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). To enter a plea that is knowing and voluntary, the defendant must have "a full understanding of what the plea connotes and of its consequences." Boykin, 395 U.S. at 244. "Whether a plea is voluntary is a question of federal law, but this legal conclusion rests on factual findings and inferences from those findings."

---

[2] The standards that apply to a plea of guilty also apply to a plea of no contest.

<u>Fields</u>, 277 F.3d at 1212 (citation omitted). "A plea may be involuntary when an attorney materially misinforms the defendant of the consequences of the plea," for example, by falsely alleging that promises or guarantees exist. <u>U.S. v. Rhodes</u>, 913 F.2d 839, 843 (10th Cir. 1990). However, a plea is not involuntary where the defendant took "his chances" in relying upon his attorney's good-faith advice and there is no evidence of guarantees or promises. <u>See</u> <u>Braun v. Ward</u>, 190 F.3d 1181, 1189 (10th Cir. 1999), <u>cert.</u> <u>denied</u>, 529 U.S. 1114 (2000).

In this case, the state district court judge conducted an evidentiary hearing on petitioner's 60-1507 motion. The judge rejected Logsdon's claim that plea counsel had assured him the court would follow the plea agreement. The judge credited plea counsel's testimony that he never guaranteed a defendant that the sentencing judge would follow the recommendations in a plea agreement. The judge also found that Logsdon's claims that he believed he would receive a sentence of 107 months in exchange for his plea and that he was never informed of the consequences of his plea were "directly refuted by the record." <u>See</u> <u>Logsdon v. State</u>, Case No. 02-C-0887, <u>Transcript of 60-1507 Hearing</u> (T. 1507) at 96. He noted Mr. Logsdon's "extensive experience dealing with the judicial system, as evidenced by his criminal history score" including 15 prior convictions. <u>Id.</u> at 101. The Judge referred to the record:

> The movant signed a plea agreement which expressly informed him that the sentencing court was not bound by the terms of the plea agreement . . . . The document further listed the possible range of sentences that the movant could receive, and specified that the court could impose the sentences concurrently or consecutively. In addition, at the plea hearing, the court discussed with the movant the constitutional ramifications of entering his no contest pleas and the maximum penalties for each of

6

> his crimes. The court further explained the sentencing
> recommendation presented by the parties and contained in
> the plea agreement was merely a recommendation and
> specifically informed the defendant the court was not
> bound by that agreement. The movant assured the court he
> had discussed the plea with his attorney, and that he
> understood the contents of the plea agreement.

Id. at 97. The district court judge also rejected Logsdon's claim

regarding his criminal history score, finding that he was informed

it was an A in the plea agreement. Id. at 100.

Logsdon appealed, and with new counsel emphasized that he "had

a mistaken understanding that he was a criminal history category 'C'

and not an 'A'," and thus "did not know nor understand what the

maximum penalty was that he could receive." Brief of Appellant,

Case No. 05-95666 (May 2, 2006) at 6. He argued that "vague

communication relating to sentencing by counsel and the district

court combined to lead Mr. Logsdon to his honest mistake" in

believing there were much lower sentencing limits. Id. at 10. He

claimed that Mr. Brown "did not fully and frankly advise" him, and

as a result he had mistaken ideas and lacked knowledge of the

potential sentence he could receive.

The KCA applied the correct legal standard[3] and reviewed this

claim on the merits. From their own review of the record, they

_____

[3]    The KCA held:

> The pertinent inquiry is whether, at the time of the plea, the
> defendant made a voluntary and knowing choice to enter a plea. To
> this end, K.S.A.2006 Supp. 22-3210(a) requires a court to inform a
> criminal defendant of the direct penal consequences of the plea, to
> address the defendant personally to determine whether the plea is
> voluntarily and knowingly made, and to ascertain whether a factual
> basis for the plea exists. See Muriithi, 273 Kan. at 964 (noting
> that 22-3210(a) incorporates the due process requirements set forth
> in Boykin v. Alabama, 395 U.S. 238, 23 L.Ed.2d 274, 89 S.Ct. 1709
> [1969]).

Logsdon, 157 P.3d 670 at *3.

found:

> At the plea hearing, the district judge specifically
> inquired about Logsdon's understanding of the plea
> agreement. Logsdon stated that he understood the
> agreement and had no further questions. The district
> judge explained the applicable sentencing range for each
> offense and noted that the sentencing judge was not bound
> by the recommendations of the plea agreement. Logsdon
> proceeded to enter pleas of no contest to all of the
> charged crimes, and the district court accepted the pleas
> and found Logsdon guilty.
>
> Logsdon filed a motion for a downward durational
> sentencing departure. Within the motion, Logsdon again
> acknowledged that his criminal history score was A but
> noted that some of his person felonies were due to
> aggregated misdemeanors. Logsdon argued that because he
> possessed only one actual prior conviction for a person
> felony, the court should sentence him as though he
> possessed a criminal history score of C.

Logsdon, 157 P.3d 670 at * 1. The KCA concluded:

> Logsdon testified that he understood that the sentencing
> judge could order his sentences to run consecutively. The
> written plea agreement also specifically informed Logsdon
> that "the court may, in its discretion, order that the
> sentence imposed for each offense be served concurrently
> or consecutively." The plea agreement informed Logsdon of
> the guidelines sentencing range for each of the charged
> offenses. The district court reminded Logsdon of these
> sentencing ranges at the plea hearing, and Logsdon stated
> that he understood the sentencing ranges. Based on our
> review, the district court's conclusion that Logsdon fully
> understood the direct penal consequences of his pleas is
> supported by the record on appeal.

Id. at *4.

The KCA also expressly determined petitioner's claim that he

was unaware of his correct criminal history score:

> Despite Logsdon's claim that he was unaware of the
> aggregation of person misdemeanors to increase his
> criminal history score until the morning of sentencing,
> there is substantial competent evidence to the contrary.
> Logsdon's defense counsel testified he was aware that
> Logsdon's criminal history score would be classified as an
> A; therefore, he would have had no reason to inform
> Logsdon otherwise. Moreover, the written plea agreement
> clearly indicates that Logsdon possessed a criminal
> history score of A. As Logsdon acknowledged his
> understanding of the plea agreement during the plea

> hearing, he would have possessed knowledge of his criminal
> history prior to entering his pleas.

Id. The KCA's adjudication of this claim is entitled to AEDPA deference.

This court has undertaken its own independent review of the plea agreement, and the transcripts of Logsdon's plea proceeding and the 1507 hearing. The "Defendant's Acknowledgment of Rights and Entry of Plea" form (the plea agreement), signed by petitioner and his counsel, set forth in writing the sentencing range for each type of offense charged. See State v. Logsdon, Case No 00-CR-1551, Record at 60. In the agreement, Mr. Logsdon acknowledged that he understood these were the ranges of the sentences that could be imposed against him. Id. at 61. He also affirmatively indicated that he had discussed the charges and the sentencing ranges with his attorney. Id. By signing the agreement and acknowledging having read and understood it, Mr. Logsdon also indicated he understood that the court may "order that the sentence imposed for each offense be served concurrently or consecutively" (id.), and that the court may impose "any or all of the maximum penalties and the maximum fines in combination. . . ." Id. at 62. By signing the agreement, Mr. Logsdon also acknowledged that his criminal history score was "believed to be a category A." Id. The plea agreement also indicates that Mr. Logsdon understood from discussions with his attorney and the court that "regardless of the plea agreement between myself, through my attorney, and the District Attorney, this court is not bound to agree to, nor to accept, the terms of the plea agreement." Id. at 62. He further indicated that his decision to accept the plea agreement was "completely voluntary without anyone

having . . . promised" him anything of benefit as an inducement for
his pleas. <u>Id.</u> at 63. Finally, Logsdon stated that he had read the
agreement and "fully" understood its contents and "fully and
completely" understood the consequences of his pleas pursuant to the
plea agreement. <u>Id.</u> The written plea agreement was prepared by
Logsdon's trial counsel, Mr. Brown, who certified therein that he
"has read this document (and) has fully discussed the same with the
defendant." <u>Id.</u> at 63.

At the plea proceeding, Mr. Logsdon stated in open court that
he had discussed the plea agreement with his counsel, had no
questions, and was satisfied with counsel's performance. <u>State v.
Logsdon</u>, Case No. 00-CR-1551, <u>Transcript of Plea Proceeding</u> at 4.
The judge inquired whether Logsdon understood that "the sentence
recommendation . . . contained in this plea agreement is a
recommendation to the Court" and "the Court is not required to
follow it . . . ," to which Logsdon replied: "Yes, Your Honor." <u>Id.</u>
Logsdon also stated that his attorney had discussed the possible
penalties for the offenses with him. <u>Id.</u> The judge conducting the
plea inquiry informed Mr. Logsdon that:

> The crime of aggravated robbery is Severity Level 3 on the
> sentencing guidelines grid and it carries a range of
> sentence from as low as 55 months to as high as 247
> months[4] depending upon what your prior criminal record is.

<u>Id.</u> The judge proceeded to describe the crimes of kidnaping,
aggravated burglary, and felony theft and the sentencing range for
each in the same manner. <u>Id.</u> at 4-5. He then asked Logsdon, "Do

---

[4] The trial court thus advised Mr. Logsdon prior to accepting his plea
that he could be sentenced to a term of incarceration ranging from 55 to 247
months on a single count of aggravated robbery conviction, which was only one of
his 21 convictions.

you understand that's the possible range of penalty for these offenses?"  Logsdon replied, "Yes, Your Honor."  <u>Id.</u>  "Such 'representations of the defendant . . . constitute a formidable barrier in any subsequent collateral proceedings." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977)(citations omitted).  "Solemn declarations in open court carry a strong presumption of verity'." <u>Id.</u>

After sentence was pronounced, Brown argued the departure motion.[5]  The court then addressed the motion and Logsdon's criminal history:

> Mr. Logsdon, you have an extremely serious criminal history . . . .  I don't think . . . that your . . . six person misdemeanors is exactly a mitigating factor. . . . That's very serious that you have six battery convictions, and I think you certainly deserve to be in criminal history category A as the Legislature intends.  . . .[Y]ou have 15 convictions, and they are mostly for crimes of violence against persons or involving weapons.  In addition to the six battery convictions, you have one conviction for a drive-by shooting. . . .  I spent a good deal of time thinking about your case, and it's difficult for me to find any reason why I shouldn't just impose the very maximum sentence that's allowed by law . . . .
>
> [T]he court's unable to find any substantial and compelling grounds to grant any sort of a durational or dispositional departure in your case.
>
> . . . There's no compelling reason why all the counts should be concurrent with each other.  . . . [I] think it's very obvious that you need to be separated from society for a very long period of time.  As a result of that, I'm running the sentence on the three aggravated robbery cases to be consecutive with each other.  All other counts will be concurrent with each other.  That leaves you with a total term of incarceration of 351 months.  It could be much worse than that, Mr. Logsdon.

---

[5]     In support, counsel pointed out that to get A, six person misdemeanors had to be aggregated (three each) to make two person felonies, which combined with his other gave him three person felonies.  He argued that "the more accurate sentence" to impose would be to treat defendant as if he had a criminal history score of C.  <u>State v. Logsdon</u>, 00 CR 1551, <u>Transcript of Sentencing</u> (Nov. 8, 2000)(T.S.) at 5-7.

T.S. at 8-10.

Much of the testimony at the 1507 evidentiary hearing supported the state court findings and did not prove petitioner's claims. Mr. Logsdon testified: "I was aware that my sentences could be ran consecutive, but I was under the impression that I was in box C. . . ." Logsdon v. State, Case No. 02-CV-887, T. 1507 at 53. Thus, his own testimony refuted his claim regarding consecutive sentences. In addition, Logsdon testified that he had been "in the system" and:

> was always under the impression that . . . the judge
> always went with the DA, (and he) knew it was standard
> procedure for them to say he didn't have to, but I've
> never seen it happen any other way in all the cases I've
> been in. . . ."

Id. at 60. This testimony indicates Logsdon's beliefs as to sentencing were based upon his own experiences and misconceptions.

Logsdon testified that before sentencing he believed his criminal history score was C, and on the morning before entering his plea he was informed that some misdemeanors had been aggregated into felonies so he was "under box A." Id. at 54. Nevertheless, he still believed his score would be C because his counsel told him the State had agreed to their filing a motion for durational departure "back to . . . C." Id. Logsdon also testified that he believed his score would be C and he would receive a sentence of 107 months because of the "standard procedure" motion for departure. Id. at 78, 85. Logsdon's counsel, on the other hand, testified "we thought he had a criminal history score A." Id. at 45. Brown also testified that he and the State negotiated the number 107 as the

lowest departure the defense could seek[6], which "would . . . get us down to what would be a criminal history score C, even though he had an A." Id. at 33. Counsel likewise alleged in the departure motion that Mr. Logsdon "does indeed" have a criminal history score of A.[7] Brown also testified that they had planned to go to trial but talked about the plea agreement over the three-day period before trial was scheduled to begin on October 10, 2000. He testified that he had represented Mr. Logsdon "before in a plea" and knew he had "past experience with the law." Id. at 44-46. He further testified that he did not believe Mr. Logsdon had grounds to claim his plea was not knowing and voluntary. Id. at 38.

Logsdon testified that he believed the judge would impose a sentence based on the recommendations of the attorneys, and that he would receive a sentence of 107 months. Id. at 62. Logsdon testified that he had asked Brown if he was going to get 107 months, and Brown replied that since Brown was not a public defender and personally knew the judge, Logsdon "would get the plea." Id. at 54. On cross-examination however, Mr. Logsdon testified that the plea agreement informed him the court was not bound by the recommendations of the attorneys. Id. at 64. He also testified that he recalled the court informing him that the sentencing judge

---

[6]    The 107-month figure was arrived at by calculating Mr. Logsdon's sentences using a criminal history score of C, then using the "aggravated number" in the guideline grid box for each offense, and running all sentences concurrent. State v. Logsdon, Case No. 00-CR-1551, Record, "Motion for Durational Downward Departure of Sentence" at 68.

[7]    At sentencing, after the judge stated that Logsdon's criminal history included six person misdemeanors and one person felony, which "translates into criminal history category A," Logsdon was asked if he agreed with the record set forth, and he responded affirmatively. T.S. at 3. He and his counsel stated at that time that there was no legal reason not to proceed with sentencing. Id. at 4.

would not be bound by the plea agreement (<u>Id.</u> at 66) and as to what sentences the court could impose (<u>Id.</u> at 69), as well as his telling the court that he had discussed the plea agreement with his attorney and was satisfied with counsel's representation (<u>Id.</u> at 66).

Logsdon also testified that had he known he could get "that much time" he would have taken his chances at trial (<u>id.</u> at 57), and had he received the sentence he expected he would not be complaining about the results of the case. <u>Id.</u> at 67-68. As the KCA aptly held:

> Even though Logsdon now claims he wanted a jury trial, Logsdon testified that the only reason he wanted to withdraw from his plea agreement following sentencing was he did not receive the sentence he anticipated. The mere fact that a criminal defendant does not receive an expected or desired sentence, however, is not a basis for overturning an otherwise proper plea. <u>State v. Chesbro</u>, 35 Kan.App.2d 662, 670, 134 P.3d 1, rev. denied 282 Kan. (2006).

<u>Logsdon</u>, 157 P.3d 670 at *2.

The main "proof" Mr. Logsdon offers for his claim that his pleas were not knowing and voluntary is his own post-sentencing statements that he believed his criminal history score would be a C, the court would run all sentences concurrent, and he would receive a sentence of 107 months as a result. There is clear evidence in the record that Mr. Logsdon was provided information that contradicted each of these premises. At the plea hearing, the judge plainly stated, and Logsdon acknowledged understanding, the ranges of possible sentences for each of the multiple offenses, that consecutive terms could be imposed, and that the court was not bound by the agreement. "This colloquy between a judge and a defendant before accepting a guilty plea is not pro forma and without legal significance." <u>Fields</u>, 277 F.3d at 1214. "Rather, it is an

important safeguard that protects defendants from incompetent counsel or misunderstandings." Id. At these colloquies, "judges take the time to insure that defendants understand the consequences of a guilty plea." Id. (citing cf. Fed.R.Crim.P. 11(c)(entitled "Advice to Defendant" and requiring that a court address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, inter alia, the nature of the charge and the maximum possible penalty provided by law). Any misapprehension that Logsdon may have labored under with regard to his criminal history score, or the maximum possible penalties he faced, or the court's authority to order consecutive sentences was clarified by the court prior to his entering pleas of no contest. Had Mr. Logsdon believed he was guaranteed a certain sentence in exchange for his plea, then he could and should have exposed that guarantee during this colloquy. Fields, 277 F.3d at 1214.

As often repeated herein, the record indicates Logsdon was informed that his calculated criminal history score was A, that the court was not compelled to order concurrent sentences, and of the maximum sentences he faced on 21 separate counts. Even with the double-base sentence limitation,[8] Logsdon should have realized that he was facing a potential total sentence of well over either 107 months or 247 months.[9] This court has found no U.S. Supreme Court

---

[8]    Under the double limit rule, the maximum total prison sentence that can be "imposed in a case involving multiple convictions arising from multiple counts within an information, complaint or indictment cannot exceed twice the base sentence." K.S.A. 21-4720(b)(4). The "base sentence" is that imposed by the judge for the "primary crime." The primary crime is one with the highest crime severity ranking. K.S.A. 21-4720(b)(2).

[9]    That the district judge specified no maximum greater than 247 months when announcing the separate sentencing ranges for multiple convictions is not the same as a judge misinforming a defendant that the total maximum sentence he could receive is 247 months.

case permitting a defendant, who was correctly informed of the consequences of his plea, to withdraw his plea upon receiving a much longer sentence than anticipated, by simply disavowing his statements before sentencing that he understood the consequences. Dissatisfaction with a sentence is clearly not grounds to overturn a plea. The absence of Supreme Court precedent on Mr. Logsdon's underlying constitutional theory is fatal to his federal habeas corpus claim.

Mr. Logsdon does not suggest that he was incapable of understanding the information regarding the consequences of his pleas.[10] Nor has he presented any evidence that his mistaken belief or lack of understanding resulted from a culpable act on the part of his plea counsel, the judge, or the prosecution. Even a mutual mistake as to the defendant's criminal history score, standing alone, is generally insufficient to justify withdrawal of a plea. He has also not established that his plea was the product of duress or misrepresentation or an unkept promise. At most, Logsdon indicates he had an erroneous expectation that the judge would grant his motion for downward departure and sentence him as recommended in the plea agreement. See Fields, 277 F.3d at 1213. "An erroneous sentence estimate by defense counsel does not render a plea involuntary, and "a defendant's erroneous expectation, based on his attorney's erroneous estimate, likewise does not render a plea involuntary." Wellnitz v. Page, 420 F.2d 935, 936-37 (10th Cir. 1970)(internal citations omitted). As the Supreme Court has

_____

[10] At the time of entering his plea, Mr. Logsdon was 20 years old and had completed 10 years of schooling. He has alleged no facts suggesting he was incapable of comprehending the information provided, or was unfamiliar with the criminal process and sentencing.

explained:

> Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

McMann v. Richardson, 397 U.S. 759, 770 (1970).

The record shows that Logsdon received a lawful sentence. The sentencing judge in Kansas, like in federal courts, is given discretion by statute to impose concurrent or consecutive sentences when there are multiple counts of conviction. K.S.A. 21-4720(b); see McGoldrick v. State, 33 Kan.App.2d 466, 104 P.3d 416 (Kan.App. 2005), review denied, (Kan. June 9, 2005)(citation omitted). Under K.S.A. 21-4704(e)(1), "[t]he sentencing court has discretion to sentence at any place within the sentencing range established by the sentencing guideline grid." Mr. Logsdon received presumptive sentences for his crimes. See K.S.A. 21-4704(f). It was not the sentence he wanted or anticipated. However, he was adequately advised of the penalties he faced when he was informed of the maximum sentence for each count, and that the court could order the sentences to run consecutively rather than concurrently. See McGoldrick v. McKune, 2006 WL 1302197, *3 (D.Kan. May 10, 2006);[11] appeal dismissed, 196 Fed.Appx. 666 (10th Cir. 2006), cert. denied, 549 U.S. 1233 (2007). In short, Logsdon was sentenced within parameters specifically set forth by the plea agreement and as explained by the court. Consequently, he has not shown that his

---

[11]     A copy of this unpublished opinion is attached in accordance with rules of the Tenth Circuit.

plea was not knowing and voluntary. See U.S. v. Williams, 948 F.Supp. 956, 964 (D. Kan. 1996), appeal dismissed, 118 F.3d 717 (10th Cir.), cert. denied, 522 U.S. 1033 (1997).

There is no doubt that the findings of the state courts underlying their conclusion that Logsdon's plea was knowing and voluntary are supported by the record. Mr. Logsdon has presented no clear and convincing evidence to rebut the courts's factual findings. Furthermore, petitioner has not demonstrated that the KCA's conclusion that he entered his no contest pleas knowingly and voluntarily "was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court . . . or . . . was based on an unreasonable determination of the facts . . . ." 28 U.S.C. § 2254(d). Accordingly, the Court concludes that petitioner is not entitled to habeas relief on the claim that his plea was not knowing and voluntary.


**CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL**

Petitioner claims that the attorney representing him during plea proceedings was constitutionally inadequate. In support, he alleges that: (1) counsel assured him that he would receive a sentence of 107 months, (2) counsel did not inform him of the maximum possible penalty, (3) petitioner believed his Criminal History Category was C rather than A, (4) counsel filed a direct appeal without an issue to appeal and without consulting petitioner, and (5) counsel failed to file a motion to withdraw plea after petitioner "expressed that he did not want the plea at sentencing."

"The Supreme Court has set forth a two-part test for evaluating

18

the claim of a habeas petitioner who is challenging his guilty plea on the ground that he was denied his Sixth Amendment right to effective assistance of counsel." Miller v. Champion, 161 F.3d 1249, 1253 (10th Cir. 1998)(citing Hill, 474 U.S. at 57 (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)). First, this court must ask whether "counsel's representation fell below an objective standard of reasonableness." Id. "Performance by defense counsel that is constitutionally inadequate can render a plea involuntary." Romero, 46 F.3d at 1033; see Worthen v. Meachum, 842 F.2d 1179, 1184 (10th Cir. 1988), overruled on other grounds, Coleman v. Thompson, 501 U.S. 722 (1991). However, a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making this assessment, the defendant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Strickland, 466 U.S. at 689 (quotations omitted). "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999).

The second, or "prejudice," requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome, in this instance, of the plea process. In "order to satisfy the 'prejudice' requirement, the defendant must show that

there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59.   The court "may address the performance and prejudice components in any order, but need not address both if [Logsdon] fails to make a sufficient showing of one." <u>Boyd</u>, 179 F.3d at 914; <u>Fields</u> 277 F.3d at 1215-16.

Grounds (1), (2) and (3) for this claim have already been considered in connection with petitioner's claim that his plea was not knowing and voluntary, and found to be refuted by the record. In his Brief of Appellant on direct appeal, Mr. Logsdon argued his "most significant contention" was that plea counsel "assured" him the "court would honor the plea agreement."   Mr. Logsdon also alleged counsel had informed him that based upon his knowledge and experience with Judge Malone, the judge had never gone against a plea agreement.   As proof of his allegations that he pled no contest believing he would receive a sentence of 107 months, petitioner relied upon his statements immediately after the court pronounced sentence[12] and his own testimony at the 1507 evidentiary hearing. He argued that his statements "repudiated his plea" and support his claim that counsel misled him into taking the plea.

The Supreme Court "has not squarely addressed under what conditions an attorney's erroneous sentence estimate rises to the level of constitutionally deficient performance." <u>See</u> <u>Gardner v.</u> <u>McKune</u>, No. 06-3149-KHV, 2007 WL 852645 (D.Kan. Mar. 21, 2007), <u>appeal</u> <u>dism'd</u>, 242 Fed.Appx. 594 (10th Cir. 2007), <u>cert</u>. <u>denied</u>, 553

---

[12]    After the judge pronounced sentence, Mr. Logsdon stated: "I don't want that plea, man.   Y'all railroading me, man.   I don't want that plea, man . . . I don't want that plea man."   T.S. at 10.

U.S. 1023 (2008).[13]  However, earlier decisions of the Supreme Court,
like <u>McMann</u> cited previously, have suggested a tolerance for
miscalculations made by counsel in good-faith.  The Supreme Court
has cautioned federal courts that even in circumstances where an
attorney erred, "[i]t will generally be appropriate for a reviewing
court to assess counsel's overall performance throughout the case in
order to determine whether the 'identified acts or omissions'
overcome the presumption that counsel rendered reasonable
professional assistance." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 386
(1986); <u>see</u> <u>U.S. v. Smith</u>, 10 F.3d 724, 728 (10th Cir. 1993)(per
curiam).

    The Tenth Circuit Court of Appeals has squarely held that a
"miscalculation or erroneous sentence estimation by defense counsel
is not a constitutionally deficient performance rising to the level
of ineffective assistance of counsel." <u>See</u> <u>Williams</u>, 118 F.3d at
718 (quoting <u>U.S. v. Gordon</u>, 4 F.3d 1567, 1570 (10th Cir. 1993),
<u>cert.</u> <u>denied</u>, 510 U.S. 1184 (1994)).  In other situations where
counsel miscalculated or erroneously estimated the length of a
defendant's sentence, the Tenth Circuit has consistently
characterized such error as a miscalculation that neither renders a
plea involuntary nor counsel's performance deficient. <u>See</u> <u>e.g.</u>,
<u>Wellnitz</u>, 420 F.2d at 935 (finding plea voluntary even though
counsel informed defendant he would "get 25 years" and defendant was
actually sentenced to 100 years); <u>Braun</u>, 190 F.3d at 1181; <u>U.S. v.</u>
<u>Zambrano-Sanchez</u>, 182 F.3d 934, 1999 WL 339694 at *3 (10th Cir.
1999)(counsel allegedly estimated a sentence of 5 to 6 1/2 years and

---

[13]     This unpublished case is not cited as precedent.

the defendant received 151 months); Fields, 277 F.3d at 1213-14
(trial counsel's projections characterized as erroneous sentence
estimate did not invalidate plea where trial counsel never told
petitioner they had a promise or guarantee that by pleading guilty
he would not receive a death sentence).

The KCA expressly applied the correct legal standard in
determining petitioner's claim of constitutionally ineffective
counsel. See Logsdon, 157 P.3d 670 at *3. They fully addressed his
allegation that Mr. Brown induced him to enter into the plea
agreement by guaranteeing that the sentencing court would follow the
plea agreement and grant his motion for a downward departure:

> The district court, however, specifically found that
> defense counsel made no promises to Logsdon regarding
> sentencing. Although defense counsel conceded that he
> might have informed Logsdon that the district judge
> generally followed the sentencing recommendations
> contained in a plea agreement, defense counsel disputed
> Logsdon's allegations that he had made Logsdon any
> promises based upon defense counsel's personal
> relationship with the district court judge. Moreover,
> defense counsel testified that he reviewed the plea
> agreement with Logsdon and informed him that the district
> court was not bound by any sentencing recommendations
> contained within the plea agreement.
>
> According to Logsdon, defense counsel assured him that he
> would be sentenced to no more than 107 months, the
> presumptive guidelines sentence for a person possessing a
> criminal history score of C. A plain reading of the plea
> agreement, however, set 107 months as the lowest departure
> the State would permit Logsdon to seek, which indicated
> higher sentences were a distinct possibility. While
> defense counsel argued that Logsdon should be classified
> as a criminal history category C in the motion for a
> downward sentencing departure, the motion also made it
> abundantly clear that the Kansas Sentencing Guidelines
> classified Logsdon's criminal history within the A
> category. By his own admission, Logsdon was clearly aware
> of defense counsel's arguments in the departure motion.
>
> As a result, Logsdon's assumption that he would receive a
> 107-month sentence consistent with a criminal history
> score of C was not reasonable. Logsdon was informed of
> the potential maximum sentences which the court might

impose, and he was aware the sentences might run consecutively. Logsdon also knew, or should have known, that he possessed a criminal history score of A. Under these circumstances, the district court did not err in denying Logsdon's K.S.A. 60-1507 motion requesting relief from the plea agreement.

We hold the district court's factual findings were supported by substantial competent evidence. Additionally, those findings–including that Logsdon's pleas were knowingly and voluntarily made–were sufficient to support the district court's conclusion of law that defense counsel was not ineffective for failing to file a motion to withdraw pleas.

Logsdon, 157 P.3d 670 at *5. The KCA's adjudication of Mr. Logsdon's ineffective assistance of counsel claim is considered under AEDPA's deferential standard.

Mr. Logsdon presents no evidence that his counsel promised or guaranteed that the motion for downward departure seeking to change his criminal history score to C would be granted. Nor does he present any evidence that counsel guaranteed that the judge would impose a sentence of 107 months. The State did agree, as part of the plea agreement, for defendant to seek a downward departure to a sentence of no less than 107 months. However, there is nothing to indicate that the State agreed to recommend that the court grant the departure. In fact, the State asked that the motion be denied. The testimony of Mr. Brown was credited at the 1507 proceeding that he had never guaranteed or promised a certain sentence to a client, and did not make such a promise to Mr. Logsdon.[14] Logsdon alleges no

_____

[14]    The judge presiding at the 1507 hearing found:

I believe Mr. Brown that no promises were made that the judge was going to do what Mr. Brown or the prosecutor said. I believe Mr. Logsdon knew that . . . the judge usually does what the prosecutor recommends. That was his belief. [T]he representation in all respects was properly done. . . .[I]t was a good plea bargain.

T. 1507 at 105. He also found that Mr. Logsdon had a "preconceived notion that he would be in C, not A." He stated that the matter "boils down to" whether this

23

facts showing that his counsel gave advice in bad faith, or made false promises concerning the judge's probable leniency. See Worthen, 842 F.2d 1179 at 1184 (10th Cir. 1988)("When an involuntariness claim rests on the faulty legal decisions or predictions of defense counsel, the plea will be deemed constitutionally involuntary only when the attorney is held to have been constitutionally ineffective.").

The allegations made in this case are somewhat similar to those in Braun, 190 F.3d at 1181. Braun contended that "his attorneys misled him into entering his plea when they related to him an alleged conversation with the trial judge indicating that the judge was surprised the prosecutors were seeking the death penalty . . . and when they advised him that he had a better shot in front of the judge than a jury of getting life without parole." Id. at 1188. In addition, Braun complained about his attorneys' observation that "the judge was a veteran and would not feel the pressure" to give a death sentence. Id. at 1189. The Circuit Court rejected Braun's claim, writing:

> Braun's attorneys made no guarantees regarding his sentence. Based upon their experience and expertise, they properly advised him that he had a better shot in front of the judge. . . . Moreover, it is clear Braun knew when he was entering his plea that he was taking his chances.

Id. at 1190. There is no deficient performance in counsel recommending that his client enter into a plea based, in part, upon counsel's familiarity with the district judge. Fields, 277 F.3d at 1216-17. It was not objectively unreasonable for counsel in this

---

"misunderstanding by him" and the fact that a motion to withdraw plea was not filed amounts to incompetent counsel. He required briefs on this issue. Id. at 106.

case to note that the judge would normally followed the plea agreement. In any event, just as dissatisfaction with a resulting sentence is not grounds to overturn a plea, it is also not grounds for ineffective assistance of counsel.

As another ground for this claim, Logsdon alleged that plea counsel never met with him again after sentencing, but merely sent him a letter expressing surprise at the judge's sentence and advising that a notice of appeal was filed. The record indicates Brown was directed by the deputy clerk to file an order appointing the Appellate Defender to represent Mr. Logsdon on appeal if he were not. The record includes the letter sent by Mr. Brown upon conclusion of the case, which informed Logsdon that Brown had filed not only a notice of appeal but an order appointing an appellate defender as well. <u>Logsdon v. State</u>, Case No. 02-C-0887, Record at 38. Petitioner does not show that counsel's performance was deficient for not meeting with him when Brown was no longer serving as his counsel.

Another ground alleged by petitioner is that counsel, in effect, filed a direct appeal "without an appealable issue" because the KCA had no jurisdiction to review a presumptive sentence.[15] He alleges that Mr. Brown knew he had no issue for appeal. At the 1507 hearing, Mr. Brown testified that he was surprised when the judge did not follow the plea agreement, did not grant the motion for durational departure, and "started running counts consecutive." <u>T. 1507</u> at 19. He also testified that he disagreed with the sentencing and filed a notice of appeal on November 13, 2000, which he thought

_____

[15]    K.S.A. 21-4721(c)(1) provides that an appellate court shall not review any sentence that is within the presumptive sentence for the crime.

at the time was the correct way to proceed. Id. at 38. He received a letter from Mr. Logsdon on November 14, 2000, asking him to either appeal the sentence or help Logsdon withdraw his plea. Id. at 23-24. Petitioner does not show that counsel was constitutionally ineffective for filing a Notice of Appeal at the conclusion of his representation, particularly since Mr. Logsdon urged him to do so.

Petitioner also claims that Brown as well as his appointed appellate counsel should have had the case "returned" to the district court for the filing of a motion to withdraw. He argues that petitioner's comments at sentencing and his letter should have led counsel to file a motion to withdraw plea. He alleges that Brown knew "the only way to make and preserve an issue for appeal would have been by filing a Motion to Withdraw Plea." Id. at 7. However, Mr. Brown testified that he did not believe there was any basis for filing a motion to withdraw the plea. Id. at 38. K.S.A. § 22-3210(d) governs the withdrawal of plea agreements, and provides in relevant part: "A plea of guilty or nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." When a Kansas district court evaluates a motion to withdraw plea, it is to consider whether: "(1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made." See State v. Schow, 287 Kan. 529, 543, 546, 197 P.3d 825 (2008); State v. Bey, 270 Kan. 544, 545, 17 P.3d 322 (2001)(citation omitted). Even a defendant seeking to withdraw his plea prior to sentencing has the burden of establishing the existence of good cause for permitting the plea withdrawal. Mr. Logsdon did not seek

to withdraw his plea prior to sentencing. State law permits withdrawal of a plea after sentencing only "to correct manifest injustice." K.S.A. 22-3210(d)(2); Wadsworth v. State, 25 Kan.App.2d 484, 967 P.2d 337 (1998). "The fact that petitioner no longer wished to plead guilty because of the length of the sentence is not a valid ground for withdrawal based on Kansas law." See McGoldrick, 2006 WL 1302197 at *7. Petitioner has not shown a reasonable probability that his plea would have been withdrawn under the applicable standard of manifest injustice. It follows that Mr. Brown's failure to file a motion to withdraw plea after sentencing is not shown to be deficient performance. As the state court reasonably held, counsel is not ineffective for failing to file a motion to withdraw that is without merit. Martin v. Kaiser, 907 F.2d 931, 935 (10th Cir. 1990)(holding that failure to raise meritless argument cannot constitute ineffective assistance of counsel). Furthermore, Logsdon cannot show prejudice since it does not appear that the motion would have been successful. The same is true with regard to appellate counsel.

The purpose of the effective assistance guarantee of the Sixth Amendment is to ensure that criminal defendants receive a fair trial so that the outcome of the proceeding can be relied upon as the result of a proper adversarial process." Strickland, 466 U.S. at 691-92. The record shows that Mr. Logsdon stated at the plea proceeding that he had consulted with counsel and was satisfied with the assistance he received. The court has reviewed the record with respect to the overall performance of counsel. At the 1507 evidentiary hearing, Mr. Brown testified that he had been an attorney for 30 years practicing criminal law and had been involved

in a couple thousand plea proceedings over the years. He
additionally testified:

> I've never promised anybody an outcome. Now, I have
> advised clients over the years, based upon my experience
> with a certain judge, it is my belief that he would follow
> a plea agreement, but to come out and say a hundred
> percent, you can't say that.

T-1507 at 33-34. The record reveals that counsel prepared to go to
trial, and engaged in pretrial proceedings and plea negotiations
with the State, as well as filed pertinent motions and argued on
petitioner's behalf. The record also suggests there was substantial
evidence against Mr. Logsdon, and his counsel testified this would
have been a "terrible" case to take to trial. Counsel also
testified it was his opinion that Logsdon would receive better terms
through a plea agreement. At the 1507 hearing, the State observed
in closing that Mr. Logsdon "ended up with a 29-year sentence" when
he was "facing a possible sentence of up to 54 years in prison." T.
1507 at 98. Thus, counsel in fact secured a favorable plea
agreement. Brown's performance was not completely unreasonable; and
therefore was not constitutionally deficient. See Boyd, 179 F.3d at
914 ("For counsel's performance to be constitutionally ineffective,
it must have been completely unreasonable, not merely wrong.").

Furthermore, even if petitioner had established deficient
performance, he has not shown that the state court's adjudication
regarding the prejudice prong was an unreasonable application of
Strickland and Hill. Logsdon's "post hac assertions that his
attorney predicted a lower sentence than he actually received" are
inadequate to demonstrate prejudice from his counsel's "inaccurate"
prediction. See Gordon, 4 F.3d at 1571; Worthen, 842 F.2d at 1184
(defendant not prejudiced by advice that the court specifically told

him was incorrect); <u>U.S. v. Arvanitis</u>, 902 F.2d 489, 494 (7th Cir. 1990).  Moreover, as previously noted, petitioner is required to show there was a reasonable probability that, but for counsel's alleged errors, he would not have entered a plea and would have insisted on going to trial.  Petitioner testified that the State's evidence, including the finding of his thumb print at the scene, influenced his decision to enter pleas.  Mr. Logsdon has failed to establish that he would have insisted on going to trial but for his misunderstandings.

Under the Supreme Court's general legal framework in <u>Strickland</u> and <u>Hill</u>, this court has assessed counsel's overall performance and the specific claims of attorney error.  The court finds Mr. Logsdon has not alleged facts sufficient to overcome the presumption that his counsel rendered reasonable professional assistance.  The court concludes that the state court's adjudication of petitioner's claim of ineffective assistance of counsel was not an unreasonable application of <u>Strickland</u> and <u>Hill</u> or any other controlling federal law.

The court concludes Mr. Logsdon is entitled to no relief under 28 U.S.C. § 2254, and his petition must be denied.

**IT IS THEREFORE ORDERED** that petitioner's request for evidentiary hearing (Doc. 24) and Motion to Appoint Counsel (Doc. 19) are denied.

**IT IS FURTHER ORDERED** that Mr. Logsdon's petition for a writ of habeas corpus (Doc. 1) is denied.

**IT IS SO ORDERED**.

Dated this 19th day of August, 2010, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge